[L. A. No. 66.   Department Two.—January 25, 1896.]

## CALIFORNIA TITLE INSURANCE AND TRUST COMPANY, Respondent, *v.* CHARLES W. PAULY, Assignee of the San Diego Cable Railway Company, an Insolvent, et al., Defendants. CHARLES W. PAULY, Assignee, etc., Appellant.

Street Railroads—Mortgage—Terminal Grounds Used for Purposes of Road—Foreclosure—Findings.—Grounds owned by a street railroad company at a terminus of its road, and used by it as a pleasure resort in connection with its road, and for the sole purpose of increasing the travel thereon, are included in a mortgage by it of its lines of railway and the real property "that it now owns or that it may hereafter acquire for use or adapted to use on or about its said lines of railway." And a finding in accordance therewith, in an action to foreclose such mortgage, is not vitiated by a further finding that such grounds are an "appurtenance" of said railroad. In such finding the word "appurtenance" should be construed as being used in the sense of an "addition" or "appendage" of the railroad.

Id.—Evidence.—In an action to foreclose such mortgage, parol evidence is admissible to show that such grounds were acquired by the railroad company for use and adapted to use "on or about its lines of railway."

Id.—After-acquired Property.—A mortgage may be given on property to be acquired by the mortgagor after the execution of the mortgage.

Appeal from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. George Puterbaugh, Judge.

The facts are stated in the opinion.

*James E. Wadham,* and *Frederic W. Stearns,* for Appellant.

*Dorn & Dorn,* and *E. W. Britt,* for Respondent.

*T. I. Bergin, Works & Works, E. Parker, A. E. Cochran, Luce & McDonald,* and *Gibson & Titus,* for various Intervenors.

VANCLIEF, C.—Action to foreclose a mortgage executed by the San Diego Cable Railway Company (a corporation), to the plaintiff, in trust, to secure the payment of a series of bonds executed by the mortgagor. Before the commencement of the action, the said railway company had been adjudged an insolvent debtor, pursuant to the Insolvent Act of 1880, and all its estate, real and personal, had been duly assigned to the defendant, Pauly, who was the duly elected and qualified assignee of the estate of said insolvent debtor.

The plaintiff prevailed in the lower court; and the defendant, Pauly, appeals from the judgment of foreclosure, and from an order denying his motion for a new trial.

The appellant contends that the court erred in finding that a certain piece of land, known as the " Pavilion Grounds," was embraced in the description of the mortgaged property, and in ordering a sale of those "grounds" as a part of the property mortgaged; and this is the principal point in controversy on this appeal. Subsidiary to this, however, a question is raised as to whether the court erred in admitting certain parol evidence for the purpose of applying the description contained in the mortgage to the " Pavilion Grounds."

The description of the mortgaged property in the mortgage is as follows:

"All and singular the franchises and lines of railway and appurtenances thereof of the said San Diego Cable Railway Company, which lines of railway commence at the corner of Sixth street and L street, in said city of San Diego, and thence extend along said Sixth street to

C street, on C street to Fourth street, on Fourth street to Newhall avenue, and thence on Newhall avenue and connecting streets eastward to terminus at University Heights, in said city of San Diego, a distance, including curves and switches, of five miles; and all the concrete subway, cables, cars, dummies, and other rolling stock, equipment, machinery, powerhouses, fares, rents, income, and other property of the said San Diego Cable Railway Company, appurtenant to its lines of railway above described, and its real, personal, and mixed property, franchises, rights of way, privileges, interests, and appurtenances of every kind and nature, that it now owns or that it may hereafter acquire for use or adapted to use on or about its said lines of railway; also, the following described parcel and tract of land situated in the city of San Diego, county of San Diego, state of California, to wit:

" Block three hundred and fifty-eight (358) of Horton's addition to said city of San Diego, according to the official map of said addition, by Lockling, on file in the office of the recorder of said county; the same being the block of land containing the powerhouse of the said cable railway company, together with the appurtenances."

1. Appellant contends that "the only ground on which the court holds the 'Pavilion Grounds' to be included in the mortgage is that said grounds are an appurtenance of the line of railway," and insists that whether or not those grounds are appurtenant to the railway is the only material question involved; and then proceeds to controvert the proposition that they are so, on the ground that land cannot be appurtenant to land, etc.

But I think counsel mistaken as to the ground on which the court held the "Pavilion Grounds" to be included in the mortgage. The court found, as alleged in the complaint, that the Pavilion Grounds were acquired by the railway company after the execution of the mortgage, " for use on or about its said lines of railway"; and that said grounds are " adapted to" such use, and

"were operated and held by said cable railway company . . . . in connection with said railroad, and for use in and about such railroad." These findings brought the Pavilion Grounds clearly within the description in the mortgage as a part of "its real . . . . property . . . . that it may hereafter acquire for use or adapted to use on or about its said lines of railway," though not appurtenant to the railway in the technical legal sense of the word; and, therefore, it is wholly immaterial whether the Pavilion Grounds were appurtenances or not in any sense of the word.

The only ground upon which it is insisted that the court found the Pavilion Grounds to be appurtenant to the railway is that, after finding facts which bring those grounds within the mortgage description, and show that they could not be appurtenant to the railway in the legal sense of the word, the court added the following: "And that such Pavilion Grounds, with said accessories, are an important and necessary part of the appurtenances and equipment of said railroad." But it is quite apparent that the word "appurtenance" was not here used in its technical legal sense. Read in connection with its context, the legal technical meaning of the word cannot be attributed to it without making the finding inconsistent with other material findings, to the effect that the Pavilion Grounds consist of about five acres of land which, by no legal possibility, could be appurtenant to the railway in the technical law sense of the word. Under these circumstances the finding should be so construed, if possible, without doing violence to the language expressing it, as to make it consistent with all other material findings (*Schultz* v. *McLean*, 93 Cal. 329; *Breeze* v. *Brooks*, 97 Cal. 72; *Kimball* v. *Lomas*, 31 Cal. 154); and that the word "appurtenance" may properly be used in a sense broader than its technical legal meaning, as, for example, in the sense of the word "*addition*," has been judicially recognized. In *Frey* v. *Drahos*, 6 Neb. 10, Lake, C. J., speaking of the word "appurtenances," said: "It is, however, doubtless true that

the word is frequently used in a more enlarged and comprehensive sense [than its technical legal sense], and, when it can be gathered from all the attendant circumstances that it was so understood and used by the parties, a corresponding effect should be given to it in the interpretation of a contract." (See, also, *Harris* v. *Elliott*, 10 Pet. 25, 54, and Century Dictionary, where the *law* meaning is distinguished from other senses in which the word may be used.) I think the obvious meaning of the finding in question, read in connection with the other findings above stated, is that the pavilion land and the improvements thereon, as used in connection with the railway, are important and necessary additions or appendages thereto, which meaning does not imply that they are appurtenances of the railway in the technical sense of the word, nor even that they are indispensable to the use of the railway for the purposes of transportation, but only that they are needful aids to the business, in that they increase the profits or diminish the losses of the business. If, as claimed by counsel for appellant, the finding, as they construe it, is not justified by the evidence, this is an additional reason for adopting a different construction which is justified by the evidence, provided the language of the finding is susceptible of such different construction.

My conclusions on this point are: 1. That the judgment is supported by those unchallenged findings which bring the pavilion land within the description in the the mortgage, as real estate acquired after the execution of the mortgage, and appurtenant to nothing; and 2. That the above-discussed finding relied upon by appellant is not inconsistent with those.

It is not questioned that a mortgage may be given on property to be acquired by the mortgagor after the execution of the mortgage. (As a case in point, see *Omaha etc. Ry. Co.* v. *Wabash etc. Ry. Co.*, 108 Mo. 298. See, also, Jones on Mortgages, secs. 152–57.)

It should also be noted here that it is not claimed by counsel for appellant, either in their brief or statement

on motion for a new trial, that the findings of the court are not self-consistent. They have wholly ignored or overlooked those findings which identify the Pavilion Grounds as the after-acquired real estate described in the mortgage.

2. Counsel for appellant say: "The court erred in admitting parol evidence showing the general course and termini of the cable road, the location of the 'Pavilion Grounds,' and the amount of travel induced by reason of the pleasure resort maintained thereon."

In this connection it was proved by undisputed parol evidence that the purchase of the Pavilion Grounds was contemplated by the railway company before and at the time the mortgage was executed; that one of the termini of the road was within those grounds; that the sole object of the purchase was to increase travel upon the road; that the grounds were used in connection with the road for that purpose only; that they were adapted to such use and did increase the traffic on the road about one hundred per cent; that the grounds were improved at the expense of the railway company, and were opened to the public as a pleasure resort at the same time the road was finished and opened for travel, no distinct charge being made for admission of the public to those grounds; that the railway company furnished music, a dance hall, and other conveniences for visitors and picnic parties on Sundays and holidays at an expense of two hundred to three hundred dollars per month; and that the grounds thus used by the railway company were worth three to four times as much as they would be for any other purpose.

The purpose for which such evidence was introduced, and which it served, was to prove that the Pavilion Grounds were acquired by the railway company for use and adapted to use " on or about its said lines of railway"; and thus to identify them as being after-acquired real estate described in the mortgage; or, as may be otherwise expressed, to apply to those grounds the description contained in the mortgage, though the

description, of itself, is unambiguous and sufficiently certain. That parol evidence is competent for this purpose does not admit of a doubt. (Greenleaf on Evidence, sec. 287; *Hancock* v. *Watson*, 18 Cal. 137; *Began* v. *O'Reilly*, 32 Cal. 11; *Marriner* v. *Denison*, 78 Cal. 202; *Towle* v. *Carmelo*, 99 Cal. 397.)

3. In their reply brief, for the first time, counsel for appellant contend that there is no allegation in the complaint to support the finding that the Pavilion Grounds were mortgaged otherwise than as appurtenances to the railway.

It is alleged in the complaint, after exhibiting the mortgage, that " by said mortgage the railway company did mortgage to plaintiff . . . . all its real, personal, and mixed property . . . . that it then, on said first day of April, 1890, owned or might thereafter acquire for use or adapted to use on or about said line of railway. . . . . That since said first day of April, 1890, to wit, on or about November 18, 1891, the said railway company . . . . became the owner, and thereafter, until its assignment in insolvency, was the owner in fee and in possession of" lots and blocks (particularly describing them) "known as the ' Pavilion Grounds.'" Then, after alleging the use of said grounds by the railway company, as above stated, " in and about said railroad," proceeds to allege that said Pavilion Grounds " were, as plaintiff is informed and believes, and therefore alleges, intended to be, and by said indenture were, mortgaged to this plaintiff to secure payment of said bonds."

I think these allegations afford a sufficient answer to the contention that the judgment as to the Pavilion Grounds is not supported by the complaint.

I think the judgment and order should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

MCFARLAND, J., TEMPLE, J., HENSHAW, J.